IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LARRY CLARK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-04911-M-BK |
| § | |
| CAROLYN COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 17) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 18) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

I.      BACKGROUND[1]

A.      Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In May 2010, Plaintiff filed for DIB and SSI, claiming that he became disabled in December 2009. (Tr. 154-65). His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1-3, 17-28, 87-90).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.     **Factual Background**

At the time of his alleged onset of disability, Plaintiff was 51 years old and had an eleventh grade education. (Tr. at 27, 40). In December 2009, Plaintiff was struck by a car while he was walking. (Tr. at 272). His head hit the windshield, and he rolled off the car. *Id*. He experienced a momentary loss of consciousness, but did not seek treatment at that time. *Id*. Shortly thereafter, however, Plaintiff sought treatment from a chiropractor, Dr. Steven Hanus, for neck, back, and arm pain. (Tr. at 258-68). At his initial evaluation with Dr. Hanus, Plaintiff complained of headaches and neck and back pain, and he walked with a cane. (Tr. at 260). Bending, stooping, and lifting made the pain worse. *Id*. Dr. Hanus diagnosed Plaintiff with subluxation of two vertebrae and a concussion. *Id*. On return visits, Dr. Hanus treated Plaintiff for headaches, neck and back pain, and right hand pain and numbness. (Tr. at 263-68). The range of motion in Plaintiff's neck was restricted by 15 to 20 percent. *Id.* At the beginning of his treatment with Dr. Hanus, Plaintiff also reported daily headaches and stated that the pain made it difficult for him to sleep. (Tr. 267-68). However, by January 2010, Plaintiff had stopped complaining of headaches, and Dr. Hanus released him from treatment in February 2010. (Tr. 263-66).

Plaintiff began seeing Dr. Pedro Nosnik for treatment of his pain in mid-January 2010. (Tr. at 272). Dr. Nosnik observed "a lot of pain and discomfort" when manipulating Plaintiff's right shoulder and diminished sensation in the fourth and fifth digit of Plaintiff's dominant right hand, although his grip strength was equal bilaterally. (Tr. at 273-74). The doctor ordered an EMG, and the test's findings were consistent with early acute right C8-T1 radiculopathy. (Tr. at 277). Dr. Nosnik's impression was post-concussion syndrome, post-traumatic headaches,

2

traumatic right shoulder injury, mild right ulnar nerve entrapment, lumbar sprain or strain, and vertigo. (Tr. at 274). Dr. Nosnik prescribed one medication to prevent Plaintiff's "off and on" night time headaches and two other medications for pain relief. (Tr. at 272, 274).

Plaintiff underwent MRIs of his cervical spine and right shoulder in February 2010. (Tr. at 292, 296). The cervical MRI showed disc protrusions at several levels and moderate to severe narrowing of the foramen at two levels. (Tr. at 292). The right shoulder MRI showed multiple tendon tears, mild bursitis, and moderate osteoarthritis. (Tr. at 296). Upon review of the MRI results, Dr. Nosnik opined that Plaintiff's right finger numbness in the fourth and fifth digits could be explained by severe foraminal stenosis in his cervical spine. (Tr. at 269). Dr. Nosnik conducted a physical examination in February 2010 that revealed numbness in Plaintiff's right upper extremity and reduced grip strength in his right hand. *Id*.

In March 2010, Dr. Nosnik referred Plaintiff to Dr. Neil Atlin at TX-AN Anesthesia and Pain Management for evaluation and treatment of his neck, shoulder, upper back, right arm, and hand pain, as well as numbness, weakness, and headaches. (Tr. at 287). Plaintiff reported that he was in constant pain, which prevented him from sleeping and caused feelings of depression and despondence. *Id*. He reported that although his back pain was improving, he had headaches on almost a daily basis. *Id.* Dr. Atlin observed reduced range of motion and trigger point tenderness throughout Plaintiff's spine. (Tr. at 288). He diagnosed chronic neck pain associated with cervical disc protrusions, cervicogenic headaches, right cervical radiculopathy, and myofascial pain syndrome of the cervical, mid-thoracic, and lumbar spine. *Id.*

In September 2010, Dr. Robert Goldberg performed a consultative exam in connection with Plaintiff's application for disability benefits. (Tr. at 326-27). Plaintiff stated that he had

3

been using a cane for several months due to low back soreness, and he also reported neck pain and headaches. (Tr. at 326). Dr. Goldberg's stated that Plaintiff's thighs and calves measured equally without evidence of atrophy, and a straight leg raise test was negative. *Id.* at 327. Dr. Goldberg could observe virtually no range of motion in Plaintiff's neck due to his resistance to the doctor's attempts to place him through the slightest range of motion. (Tr. at 326-27). Dr. Goldberg observed no trigger points or muscle spasms in Plaintiff's neck and noted that his shoulder shrug was quite strong, he had an excellent grip strength in both hands, and he showed normal dexterity and function in his hands and fingers. *Id.* The circumference of his upper arms was bilaterally equal with no evidence of atrophy. (Tr. 327). Although Dr. Goldberg noted that a previous examiner had diagnosed Plaintiff with cervical radiculopathy on the right, he stated that he detected no such pathology. *Id*. Dr. Goldberg stated that while Plaintiff exhibited tenderness in the lumbar muscles, he detected no trigger points or spasms, and his range of motion in that area was limited by guarding. *Id.* Plaintiff seemed unwilling to participate in some of the exercises Dr. Goldberg requested, such as toe walking and hopping. *Id.* Dr. Goldberg diagnosed Plaintiff with persistent cervical and lumbar pain, secondary to his motor vehicle accident. *Id*.

In October 2010, Plaintiff sought treatment from the Parkland Hospital urgent care clinic when he ran out of his pain medication. (Tr. 319). Plaintiff reported a history of chronic neck and back pain as well as headaches. *Id.* Tenderness and pain were observed in Plaintiff's cervical and lumbar back, and he was prescribed various pain medications and muscle relaxers. (Tr. at 318, 320). In December 2010, three weeks after being involved in another car accident, Plaintiff sought treatment at Bluitt Flowers Health Center for all-over pain. (Tr. at 335). Plaintiff had reduced range of motion in his cervical spine and weakened grip in both hands. (Tr.

at 336-37). An x-ray showed multiple bone spurs in Plaintiff's cervical spine. (Tr. at 343).

C. **Administrative Hearing**

At the September 2011 administrative hearing held on Plaintiff's case, he testified that he had moved to Dallas from Arkansas to take care of his mother and left his last job as a poultry dresser for that reason. (Tr. 44-45). He tried to get a job at a poultry plant in Dallas, but they were not hiring, so he was collecting unemployment at the time he got into his first car accident. (Tr. at 45, 47). Plaintiff testified that his pain medication helped to relieve his neck and back pain, and he had no side effects from his pills. (Tr. at 51, 55-56). He stated that he was able to use public transportation, walk a couple of blocks or around the yard for exercise, sell recycled cans, go grocery shopping, cook some meals, dress and bathe himself, change his bed linens, wash dishes, vacuum, sweep, take out the trash, frequently pick up ten or 20 pounds, possibly pick up 50 pounds, go to church, and socialize with friends. (Tr. at 42, 56-58). Plaintiff averred that his headaches were not constant, but came and went about twice a week and lasted about 20 to 30 minutes. (Tr. at 70). He thought that he could stand and sit for a total of three hours each in an eight-hour workday. (Tr. at 73).

The ALJ gave a vocational expert ("VE") a hypothetical question asking whether an individual who could sit, stand and walk for six hours, lift 20 pounds occasionally and ten pounds frequently, and occasionally crawl, squat, stoop, bend, climb and reach above his shoulders could perform any of Plaintiff's past relevant work. (Tr. at 77-78). The VE stated that such an individual could work as a poultry dresser. (Tr. at 78). When the ALJ modified the hypothetical to reflect that the individual could only stand, sit or walk for four to six hours and could sit or stand for up to 10 or 15 minutes at a time, the VE stated that such an individual could

5

not work as a poultry dresser. *Id.* Nevertheless, the VE testified that such a person could work as a production worker, cashier II, and ticket seller. (Tr. at 78-79).

**D.     The ALJ's Findings**

In September 2011, the ALJ issued an unfavorable decision. (Tr. at 20-26). At step one, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. at 22). At step two, the ALJ found that Plaintiff's persistent cervical and lumbar spine pain, post-concussion syndrome, right shoulder injury, and cervicalgia were "severe" impairments. *Id.* At step three, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal in severity the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.927(b), which involved lifting and carrying 20 pounds occasionally and ten pounds frequently, standing or walking four to six hours in a workday, and sitting six hours in a workday. *Id.* The ALJ limited Plaintiff to occasional stooping, crawling, bending, climbing, and reaching above shoulder level. *Id.* At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a poultry dresser as this work was not precluded by his RFC. (Tr. at 27). Despite the ALJ's step four finding, he made alternative findings at step five based on the testimony of the VE. *Id.* In particular, the ALJ held that Plaintiff could perform the jobs of production worker, cashier II, and ticket seller in addition to his past work. (Tr. at 28). Based on the foregoing, the ALJ determined that Plaintiff had not been under a disability as defined in the Act from his alleged onset date through the date of the decision. *Id.*

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar

evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

*1. Whether the RFC is based on substantial evidence*

Plaintiff contends that the ALJ's failure to include limitations in the RFC findings related to Plaintiff's headaches prejudiced his case. (Doc. 17-1 at 10-11). In particular, Plaintiff notes that the VE testified that if a person had to miss two or more full or partial days of work or was off task for ten percent of the workday or more, that person could not maintain employment. *Id.* at 11. To the extent that consideration of Plaintiff's headaches was subsumed in the ALJ's finding that his post-concussion syndrome was a severe impairment, he argues that the ALJ erred in failing to include limitations based on that impairment in his RFC assessment. *Id.* Specifically, Plaintiff contends that the RFC finding should have included the limitations on attention and concentration caused by his frequent headaches and post-concussion syndrome. *Id.* Had the limitations caused by his headaches been included in the RFC assessment, Plaintiff insists that a reasonable possibility exists that the ALJ's step four and step five findings would

have been different. *Id.*

Additionally, Plaintiff maintains that the ALJ's failure to include limitations in the RFC findings related to Plaintiff's right hand use prejudiced his case. *Id.* at 12. If the ALJ had properly considered evidence of Plaintiff's right hand impairment, he argues that the RFC determination might have included stricter limitations on Plaintiff's functional abilities, a different hypothetical question to the VE, and a different determination about Plaintiff's ability to work. *Id.*

Defendant responds that the ALJ clearly found that there was no evidence in the record that supported any limitations in Plaintiff's ability to concentrate because the ALJ asked the VE to assume the individual in his hypothetical question could concentrate for an extended period. (Doc. 18-1 at 4). In any event, Defendant points out, the ALJ also limited the individual to simple, repetitive tasks, reflecting that the ALJ was aware of some mental limitations. *Id.* at 4-5. As to Plaintiff's arguments regarding his debilitating headaches, Defendant maintains that his pain was treated conservatively, Plaintiff did not state that the headaches interfered with his daytime activities, and they only lasted for short periods of time. *Id.* at 5. Additionally, Defendant asserts that, while Plaintiff testified to memory and cognitive problems stemming from his post-concussion syndrome, there was no mention of any such symptoms in the medical record that would support limitations in regard to attention and concentration. *Id.* at 6.

With regard to his right hand weakness and numbness, Defendant states that the medical evidence does not support Plaintiff's argument that additional limitations in his RFC assessment were warranted. *Id.* at 6-7. Additionally, Defendant observes that a review of Plaintiff's activities of daily living does not support his allegations of right hand limitations because he

9

could cook, shop, clean, and take care of his personal needs. *Id.* at 8.

Plaintiff replies that his headaches could explain his impaired attention and concentration, thereby demonstrating a medically determinable cause for the impairments. (Doc. 19 at 2). Further, he maintains that the ALJ erred by failing to include any limitations in his RFC assessment in relation to his dominant right hand weakness and numbness. *Id.* at 4-5.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the most that a claimant is able to do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4). In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923. "[T]he final responsibility for deciding [a claimant's RFC] is reserved for the Commissioner." 20 C.F.R. § 416.927(d)(1).

The ALJ's RFC assessment in this case is based on substantial evidence. First, the ALJ's failure to include any limitations in his RFC assessment based on Plaintiff's headaches is not error for a number of reasons. Plaintiff testified that the headaches only impaired his ability to sleep, rather than his ability to function during the day, he only had them about twice a week, and they only lasted for 20 to 30 minutes. (Tr. at 70). Further, although he initially complained of headaches while obtaining treatment from Dr. Hanus, less than a month after his accident, he stopped mentioning headaches as a symptom. (Tr. at 263-66). Dr. Nosnik described Plaintiff's headaches as "off and on," which is consistent with Plaintiff's description at the hearing, and

10

prescribed him medication to prevent his nighttime headaches. (Tr. at 272, 274). Considering the relative infrequency of Plaintiff's headaches and the conservative treatment of them, the ALJ's failure to include in the RFC any limitations based on them is not error. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 640, 645 (N.D. Tex. 2013) (Means, J.) (upholding the denial of disability benefits where the claimant had received only conservative treatment for her back pain).

Further, there is no mention in any of the medical evidence of record that Plaintiff complained of any limitations in attention and concentration caused by headaches, post-concussion syndrome or any other impairment. Indeed, he self reported that he could pay attention "all day." (Tr. at 212). Plaintiff's only statement about problems in this capacity was a brief comment at the administrative hearing that his memory "comes and goes." (Tr. 54). Given the dearth of other evidence in this regard, this passing statement is not enough to warrant the ALJ assessing RFC limitations based on Plaintiff's supposed difficulties in attention and concentration.

As for Plaintiff's right hand weakness and numbness, the ALJ's RFC assessment is supported by substantial evidence because the medical evidence does not justify additional limitations. While Plaintiff did sometimes exhibit weakened grip strength and diminished sensation in two fingers, at other times his grip strength was equal. (Tr. at 273-74, 326-27). Plaintiff also was noted to have normal dexterity and function in his hands and fingers. (Tr. at 326-27). This is consistent with Plaintiff's statements that he can cook, grocery shop, dress and bathe himself, change his bed linens, wash dishes, vacuum, sweep, take the trash out, and pick up ten or 20 pounds. (Tr. 42, 56-58). Although Plaintiff did sometimes have a weakened grip and

11

numbness in his fingers, the Commissioner was entitled to resolve the conflicts in the evidence against Plaintiff. *Perez v. Barnhart* 415 F.3d 457, 461 (5th Cir. 2005).

## 2. *Whether the ALJ Erred in Determining that Plaintiff Could Work*

Plaintiff argues that the ALJ erred in determining that he could perform both (1) his past relevant work at step four of the sequential analysis, and (2) other jobs in the national economy at step five because the ALJ's RFC assessment was different from the hypothetical that he gave to the VE. (Doc. 17-1 at 13-17). Plaintiff also asserts that it is unclear whether the VE was considering the limitations posed in a prior hypothetical in combination with the standing, walking and position changes in a later hypothetical when offering her opinion. *Id.* at 17. While Defendant acknowledges that the ALJ included additional limitations in the hypothetical question to the VE, she submits that it was harmless error. (Doc. 18-1 at 9-10).

Any reversible error that the ALJ committed at step four of the sequential analysis need not be addressed by the undersigned because the ALJ's alternative findings at step five are supported by substantial evidence. In particular, the ALJ stated that he relied on the VE's testimony, and that testimony was based on the more detailed hypothetical. (Tr. at 28); *see also Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (holding that because the claimant suffered from significant nonexertional limitations, the ALJ was required to rely on the testimony of a VE to establish that other jobs existed in the economy that the claimant could perform). Remanding the case to require the ALJ to redraft his RFC finding to mirror the more detailed hypothetical question that he posed to the VE would be an empty exercise. Any error is harmless because Plaintiff's substantial rights were not affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that "[p]rocedural perfection in administrative proceedings is not

12

required" as long as "the substantial rights of a party have not been affected."). Moreover, viewing the testimony in context, it is clear that the VE was considering the additional limitations posed in the ALJ's prior hypothetical in combination with the standing, walking and position changes in the later hypothetical when she offered her opinion about Plaintiff's ability to work in the national economy. *See* Tr. at 77-78.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 17) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 18) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on September 18, 2013.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE